WYSONG & MILES CO. v. OAKLEY et al.

(Circuit Court of Appeals, Fourth Circuit.   July 15, 1910.)

No. 929.

PATENTS (§ 328*)—INVENTION—SANDING MACHINE.
  The Welker patent, No. 575,187, for a sanding machine, is void for lack of patentable invention.

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

Suit in equity by the Wysong & Miles Company against D. S. Oakley, E. N. Jansen, and Norton L. Upson.   Decree for defendants (169 Fed. 640), and complainant appeals.   Affirmed.

This suit was instituted in the Circuit Court of the United States for the Northern District of West Virginia on October 16, 1907, for the purpose of enjoining the appellees from manufacturing and selling certain sanding machines which the appellant claimed are infringements upon the letters patent which appellant claims to own.   The patent referred to was granted January 12, 1897, No. 575,187, upon the application of Louis Welker, of Williamsport, Pa., filed March 12, 1896.   The bill alleges in paragraph 1 that Welker was the original and first inventor or discoverer of certain new and useful improvements in sanding machines not used or owned by others in this country when patented, nor described in any printed publication in any country prior to his invention or discovery thereof, and alleges that such invention had not been in public use or on sale for more than two years prior to said application, and had not been abandoned to the public.   It is alleged in paragraphs 5 and 6 that Welker, by assignment dated June 26, 1907, assigned said patent to Wysong & Miles Company and that thereby the said company became the sole owner of the said letters patent.

While it is alleged in paragraph 8 of the bill that appellant had invested and expended large sums of money for the purpose of carrying on the business of manufacturing and selling machines containing the said invention and alleges that a large number of said machines were made according to said invention and sold by the appellant, no proof was offered by the appellant in the case to show that any machines had ever been made by the appellant under this patent.   The assignment was made on June 26, 1907.   Witnesses for the appellant testified that the Wysong & Miles Company machine was different from the Welker machine and made on a different principle from the Welker machine.   Witness for the appellant, W. E. Sykes, among other things, testified as follows: "Q. What have you learned to-day in regard to the making of the Welker machine, or machines upon the Welker plan, by the plaintiffs in this case, and from whom did you learn it?   A. In conversation to-day with Mr. C. W. Miles, an attorney and witness in this case, I called attention to the fact that in my opinion the Welker machine could not do the work for which it was intended, and that no such machine had ever been constructed and operated.   I then asked Mr. C. W. Miles if they had ever constructed such a machine, and he replied that they had not.   *   *   *"   It is also insisted that this fact is established by witnesses George Sprout, E. N. Jansen, W. E. Curry, witnesses for appellees, and James D. Snyder, Wm. M. Welker, and G. H. Miles, witnesses for the appellants.

It appears from the deposition of R. M. Clapp and G. H. Miles that as representatives of Wysong & Miles Company they visited the plant of the Oakley & Jansen Company before they bought the Welker patent, and that they were shown through the premises and were informed as to the kind of machines the appellees were making and the details of construction, and that after knowing these facts the Wysong & Miles Company looked up the Welker patent and bought it.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Paragraph 9 of appellant's bill alleges that the appellees have made and sold the machines containing the invention and improvements of said letters patent No. 575,187, and the bill prays for an accounting and injunction against the appellees to prevent them from continuing the manufacture and sale of the machines. After the evidence in chief had been taken for appellant, appellant served a notice upon appellees, which was filed in this cause on the 4th day of July, 1908, "that complainant will press for a decree upon the third claim only of the Welker patent in suit, No. 575,187." And said third claim in said patent is as follows: "3. In a sanding machine the combination of a pulley and stationary former, a sanding belt extending between said pulley and former, a means for adjusting said former substantially as set forth."

The answer of the appellees, in paragraphs 1 and 2, puts in direct issue the allegations of the bill as to the patent. The answer denies that Welker was the original and first discoverer of the improvements claimed in the bill, denies that such improvements were not known or used by others in the United States, denies that such improvements were not patented, or described in any printed publication in any country prior to the pretended invention of Welker, and avers that the improvements referred to were in public use and on sale in the United States for more than two years prior to the said application by Welker, and alleges that said improvements were not patentable improvements because the same had long since been previously included in patented machines and in general use. The answer also alleges that prior to the institution of appellant's suit the attorney for the complainant, C. W. Miles, visited the plant of appellees, and was there informed as to patents and inventions prior in time to the Welker patent and which rendered the Welker patent invalid. Such patents are referred to in paragraph 6 of defendant's answer. First. Patent to O. Sawyer, dated May 10, 1881, No. 241,429, for certain improvements in sanding machines. Second. Patent to O. Sawyer, dated January 27, 1891, No. 445,382. Third. Patent to F. W. Coy, dated March 11, 1884, No. 294,766. Fourth. Patent to F. W. Coy, dated April 8, 1884, No. 296,535.

It is insisted by appellees that all of said letters patent to Sawyer and Coy were for improvements in sanding machines, and for improvements which anticipated the very elements and principles involved and stated in the third claim of the Welker patent.

The answer in paragraph 7 also avers that the use of an abrasive belt passing over pulleys and having the rear face of said belt supported by a form of various shapes and sizes to suit any object to be abraded had been in general use in the United States for many years, and had been devised and used in different forms by different manufacturers for many years before Welker's application for a patent, and that the letters patent did not give to Welker the exclusive right to make, use, and sell the machines embodying the principle of the abrasive belt passing over pulleys and supported by an intermediate support or form on which the abrasive belt would rest, when used for abrading the article manufactured, and the answer denies that said patent gave the right to the appellant to claim such exclusive right against the appellees and as against the machines and appliances made, used, and sold by the appellees. The averments contained in the answer put in issue the validity of the Welker patent, and also raised the question as to whether appellee's machine infringed upon the Welker patent, if valid.

Upon the bill and answer and replication thereto the parties proceeded to take evidence, and the appellant took its evidence in chief before notice was served upon the appellees that appellant relied solely upon claim No. 3 in the Welker patent, and in March, 1909, the cause was argued, submitted, and an opinion was rendered April 16, 1909, and decree entered April 22, 1909, denying relief to appellant, and decreeing that claim No. 3 in the Welker patent, No. 575,187, is void as not containing any new or novel principle, or new application of the old principles such as would entitle the said Welker to a patent upon said third claim, and that all of the principles contained in the said third claim of said Welker patent are found in the prior F. W. Coy patents, Nos. 294,766 and 296,535, referred to in appellees' answer and in the evidence. From this decree, the appeal herein was taken.

C. W. Miles and Melville Church (Church & Church, on the brief), for appellant.

C. D. Merrick, for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

PRITCHARD, Circuit Judge. The learned judge who heard this cause below in an opinion filed herein, among other things, said:

"The defenses relied upon, while variously stated, may be epitomized to be a denial of infringement and a charge that, in view of the condition of the prior art, this Welker patent is void for lack of novelty and patentable invention.

"After careful consideration of the case, I am convinced that the latter must prevail and for these reasons: The operation of a belt upon two or more pulleys is common to mechanics. That these pulleys may or may not have rims to inclose the belt, may or may not be adjustable, or may or may not be capable of being rendered stationary, are functions alike common and well known in mechanics. If two pulleys should be connected by a sanding belt one stationary and without inclosing rims, the other revolving at such speed as to revolve the belt, the stationary pulley would be as capable of polishing in its circular form as would the former found in the Welker machine. What inventive faculty is required to substitute for this stationary pulley different formers suitable for the different wood curvatures desired to be polished? What greater novelty is involved in having the belt run over two pulleys and a former, the latter stationary, than is involved in having it run over three different pulleys one of which is stationary? It seems to me to be wholly immaterial whether you call these old and very common devices pulleys or formers. The mechanical operation is the same, and no new or novel principle or new application of old principles is involved such as to warrant a patent monopoly. I do not think such devices involve patentable novelty at all but if I be mistaken in this view I am reasonably certain every principle of them will be found in the prior Coy patents Nos. 294,766 and 296,535. It follows that complainants' bill must be dismissed with costs."

It is insisted by counsel for appellant that the structures manufactured and sold by the appellees contained the features set forth in the patent in suit and embodied the combinations and elements as set forth in claim three of said patent, as distinguished from what is disclosed in the prior art, and particularly what is disclosed in the Coy patents.

It is also insisted that, "in view of the undisputed right of defendants to use the structure disclosed in the Coy patents, due to said patents having expired, their preference for and persistence in using a different structure or combination of elements, on which a later patent has been granted, and is still in force, becomes significant. These circumstances are given added force from the testimony of defendants' expert witness who testifies that the mechanism disclosed in the patent in suit is different in principle from those disclosed in the Coy patents," and, bearing upon this question counsel rely upon the testimony of W. E. Sykes, expert witness, who testified as follows:

"Q. 42. State whether in your opinion the Coy patent, No. 294,766, and the Coy patent, No. 296,535, were the patenting of such devices and combination as to render the said Welker patent void? A. I do not think so.

"Q. 43. Please state the reasons or grounds for your said opinion? A. The Welker patent is constructed in my opinion upon a different theory than that upon which either the Sawyer or the Coy patents are constructed. The Welker patent is an attempt to drive a sanded belt not along and over the face

of the former, but around the former, by means of a single pulley, using the former as a sort of a second pulley, although not as a pulley as pulleys are ordinarily used, for the reason that it does not revolve; while in the Coy patents a belt is driven about two pulleys and along and over the face of the former, situate between the two pulleys. In other words, the Coy patents more nearly resemble the Oakley & Jansen method than they do the Welker method of operating. I do not mean by this that the Oakley and Jansen machine is not a patentable device, in view of the state of the art, as shown in the Coy patents. As to the Sawyer patent, I do not think that it in any way anticipates any of the patents heretofore referred to, or the Oakley & Jansen machine. It is intended for a single class of work only, and does not possess a former, excepting as far as the two adjacent pulleys act as such."

This witness also testified relative to the Sawyer patent as follows:

"Q. 39. Compare the combination in the Welker machine with the combination in the Sawyer patent before referred to, and state the difference in said combinations? A. I find them similar only in that each possesses a sanding belt driven by a pulley. In all other respects they appear different. * * *

"Q. 41. State whether in your opinion the issuing of the said Sawyer patent in 1881 was the patenting of such a device or combination as to render void the Welker patent? A. I do not so regard it."

Counsel for appellant further contend that:

"Regarding the Coy patents, defendants' practical witness Curry testifies that, while he has had no practical experience with this machine, he considers it applicable to a certain class and range of work, that it belongs to the same class of machines as the Sawyer, and that the Sawyer machine is applicable to a wider range of work than the Coy machine. He notes that the Coy form is on the under, instead of the upper, side of the machine, and which he considers an objectionable feature. He testifies that in both the Coy patents the form is stationary or nonadjustable. He testifies that the Coy machine is not adjustable to treat scrollwork. He testifies that the Sawyer machine is adapted to a wider range of work than the Coy machine. He testifies to important modern developments, in view of which he does not consider the Sawyer as an ideal machine for all classes of work. He testifies that it is necessary in certain classes of work to advance the form beyond the normal belt line, that is, cause the form to give shape to the belt, or dominate the shape of the belt.

"Defendants' expert witness Sykes, relative to the Coy patents, testifies as follows:

" 'Q. 42. State whether in your opinion the Coy patent No. 294,766 and the Coy patent No. 296,535 were the patenting of such devices and combinations as to render the said Welker patents void? A. I do not think so.'

"The testimony above referred to is directly opposed to any contention on the part of the defendants that the Sawyer or Coy patents disclose the invention in controversy, or that in view of said patents there was a lack of invention on the part of Welker."

The first patent is what is known as the "Sawyer Sanding Machine," for which patent was issued May 10, 1881, No. 241,429. The opening of the specifications filed at the time of the application for this patent contains the following claim:

"That Sawyer had invented 'certain improvements' in sanding machines; that the same relates to mechanism for smoothing convex or rounded wooden surfaces by the agency of an endless belt coated with sand, emery, or other suitable abrading material."

The use of the words "certain improvements" shows that prior to the date of the application sanding machines were in existence, and it is fair to assume that it was the intention of Sawyer to make certain

improvements in regard to such machines. The second Sawyer patent was issued January 27, 1891 (No. 445,382); and, while this patent is not in suit, it is referred to in the pleadings, and certain portions of the evidence relate to this point.

The next patent is what is known as the "Coy patent," issued March 11, 1884 (No. 294,766). The application in this instance was filed December 1, 1883, and recognizes the existence of abrading ·machines, only claiming certain improvements in relation to the same. There, it was contended that by the principle of a form or former, applied to the back of the belt to correspond to the shape of the article to be abraded, furniture with irregular surface could be polished. In the application it is said that the invention "consists of the provision of a rigid support, that is, one composed of materials incompressible in all directions under ordinary pressure, which may be formed in general outline to approximate the work to be abraded, said support having a yielding or compressible surface arranged to bear against the inner side of the belt between the supporting pulleys, the belt being caused by the article acted upon to conform to the contour of said support; the support being by preference detachable and secured to a fixed holder so that differently formed supports may be used interchangeably with the same pulley." The general scheme of this patent seems to have been to attain the highest perfection in polishing furniture with irregular surface, such as was described at the time of the argument.

The second Coy patent was issued May 8, 1884, and "this invention relates to abrading machines having an endless belt with an abrasive surface, mounted on two supporting pulleys, an intermediate support arranged to bear against the back of the belt at a point between the supporting pulleys, and supporting the belt against pressure exerted on the latter by the article presented to the belt for this smoothing action, as shown by letters patent No. 294,766."

Thus it will be observed that in the second Coy patent we have the idea of a former or support receiving additional development, and a rigid support is substituted for the idler pulley at the end of the machine, all of which clearly involves the end sought to be obtained by the Welker patent. Antedating the Welker patent we have four patents, to wit, the two Sawyer patents and the two Coy patents, all based upon the same idea and inaugurated for the accomplishment of the same end.

George Sprout, a witness examined, testified that he was foreman of the Parkersburg Chair Company, and that he had had 15 years' experience in machinery. Among other things, he was asked what machines his company had used, and in reply he said:

"A. They have sand belt machines, where the belts go over pulleys and forms. The forms are adjusted to flat surface or oval shape sanding."

When asked as to what machines were used at the Parkersburg Chair Company's plant, witness said:

"A. Wysong & Miles is one make and Oakley & Jansen is another. Then the superintendent, Mr. Curry, has got two makes of his own, long before he bought any from Wysong & Miles Company."

He was then asked to look at the copy of the L. Welker patent No. 575,187, and state whether he had examined said patent and figures, and in reply witness said that he had examined figures 5 and 1, the construction of the sand belt and form. When asked if he had examined the Oakley & Jansen machine, he said:

"A. I examined the two machines, and the Oakley & Jansen machine was quite different from the Welker machine."

Witness was then asked in what respect they differed, and he replied:

"A. In the first place, the difference is in the form. The Oakley & Jansen form is adjustable to any angle and to any shape, oval or straight, which you could not do on the Welker machine, for there is no adjustment to do it with. In order to do sanding, oval shaped, my experience is it requires a sand belt to go over a pulley and form; in order to make the belt buckle it requires two pulleys and a form. The Oakley & Jansen machines, the belt is adjustable automatically, independent of the form.

"Q. How many pulleys are used in the sanding belt on the Welker patent as shown by the diagram figure 1? A. One pulley which the belt passes around.

"Q. And at the other end what does the belt pass around? A. At the other end the belt passes around a form. * * * Q. From your practical experience in the use and operation of sand belt machines, please state whether the work which can be done on the Oakley & Jansen machines can be done on the Welker machine? A. The work on the Oakley & Jansen machine in regards to oval-shaped work couldn't be done on the Welker machine. The Welker machine only has one pulley and a form, where it requires two pulleys with a form in order to give the belt proper attention, and buckle it for oval shapes or round shapes."

Elias N. Jansen, one of the appellees, testified that he had had nine years' experience as a mechanical draughtsman and was familiar with the machine from the cuts shown in the figures accompanying the patent; that the appellees are manufacturing and selling sanding machines on a patent issued to D. S. Oakley, transferred to Oakley & Jansen Machine Company, and identified the same with the photographs, Exhibits Nos. 1 and 2, with the deposition of George Sprout; that the Oakley & Jansen machine is entirely different from the Welker machine, and explained the difference between them; that there were no parts similar in the two machines except that pulleys were used for driving the sand belt. He further testified that the machines made by the appellees were made with the sand belt running over two or more pulleys and the former is used between the pulleys; that Wysong & Miles Company are not making a machine like that shown in the cut of the Welker patent; that the only similarity between the two machines is the use of an endless sand belt; that it is not customary in the use of the Oakley & Jansen machine to locate the former at one end of the machine as shown in Exhibit 1; that it is more commonly used in the center of the belt.

W. E. Sykes was also examined by the appellants as an expert witness on patents. He testified, among other things, that in the Oakley & Jansen machine the belt passes along and over the surface of the former and not around it; that the former is not used in the Oakley & Jansen machine in the place of a pulley; that in comparing the combination used in the Welker machine and the combination used in the

Oakley & Jansen machine they are similar only in two features; that they possess a sand belt and a driving pulley; and that they differ in every other respect. He further testified that the Coy patents are like the Oakley & Jansen, but that they do not interfere with or infringe upon the Welker patent.

It is a matter of common knowledge that originally wood or other material was abraded by the use of a piece of sandpaper or a piece of wood, cloth, or some other material, coated with sand, emery dust, or other substance, which was applied to the surface sought to be polished or abraded by the hand. Gradually, with the development of manufacturing industries and the consequent demand for the manufacture of large quantities of furniture, the necessity arose for the use of machinery for abrading and polishing purposes; and this was accomplished by the use of a belt coated with material used in making sandpaper, which passed around pulleys or rolls. This method, of course, had its drawbacks, one being that the continuous belt could not be effectively utilized to polish a piece of furniture with an irregular surface; and it among other things suggested the idea of what is known as the "former," to be placed behind the belt for the purpose of bringing the same in contact with the surface sought to be abraded or polished. It appears from the evidence that about 13 years before Louis Welker filed his application for letters patent the various principles and elements to which we have referred were fully developed and used; and, as we have heretofore stated, letters patent issued for the same.

It is contended by counsel for the appellees that the Oakley & Jansen machine is an entirely different combination from that shown in the Welker patent, having many advantages and combinations of devices not contained in the Welker patent, the difference being epitomized as follows:

"First. The Oakley & Jansen machines do not use a stationary former upon a spindle at the end of the sand belt.

"Second. It does not pass the sand belt around the former.

"Third. The former is not fastened in place as in the Welker machine.

"Fourth. It does not have the oscillating movement as in the Welker machine and does not use the eccentrics for that or any other purpose.

"Fifth. The former used is an intermediate former or support.

"Sixth. The attachment to a former is to an arm instead of to a spindle.

"Seventh. The former is attached to said arm, not by a clamp nut, but by a vice, which seizes and holds the sides of the former and which is loosened and fastened in an entirely different manner from that used in the Welker machine.

"Eighth. The vice holding the former is hinged upon the arm, so that the former may be set at any angle desired with regard to the belt.

"Ninth. The arm holding the former is slotted, so that in fastening it to the frame of the machine it may be raised or lowered at will by the operator, by loosening a nut having its own wrench attached to it and a part of it.

"Tenth. The arm so fastened to the machine, by loosening said fastening, may be moved along the frame of the machine by means of a slot in said frame, and thus brought near to the driving pulley or near to the pulley at the opposite end of the machine, as may be desired.

"Eleventh. The frame of the machine may be raised at one end by means of a slotted arm, as shown in the photograph No. 1.

"Twelfth. There is an automatic tension of the belt by means of a movement of the carriage of the pulley at one end of the machine, which move-

ment is obtained by the turning of a wheel, to which a cord and sectional weights are attached, the said wheel turning a spindle with cogs attached to working in ratchet cogs of the frame of the machine.

"Thirteenth. Any size, shape, or length of the former may be used upon this machine, and the surface of it may have just such irregularity as may be desired to fit any object which the operator may desire to polish.

"Fourteenth. A more elaborate combination of the principles of said machine are shown in photograph No. 2, where an upright and horizontal machine are combined, and provision is made also for a third belt so that three men may work at said machine at one time."

This contention of appellees may not in all respects be correct, but in the main is sustained by the evidence considered by the court below.

It is also insisted by counsel for appellees that the patenting of an improvement does not absorb the elements of a patent previously granted, and that it does not prevent the use of it by the former patentee or by the public when the patent runs out. Being of the opinion that there is sufficient evidence to sustain this contention, and applying the principle thus invoked, we think the court below was right in holding that there was no infringement by the Oakley & Jansen machine, it being a new combination, with new devices used in a new way.

The court below found that the Welker patent does not contain any new or novel principle or new application of principles on which to base a patent on said third claim, and, further, that all of the principles contained in the third claim in the Welker patent are found in the prior F. W. Coy patents. There is no assignment of error which challenges the finding of the court as to these two points, and, in the absence of such assignment of error, these findings must be by this court assumed to be correct.

It is insisted by counsel for the appellees that there is no infringement; and that, owing to the condition of the prior art, the Welker patent is void for lack of novelty and patentable invention. After a careful consideration of the evidence and inspection of the machines exhibited as evidence, we are of opinion that what is known as the Welker machine does not involve a patentable invention. In other words, it is merely the result or product of mechanical skill—a mere change in the size of device or machine, based upon the mode of operation already patented. The evidence shows that the patent is based upon matters resulting from pure mechanical skill, and a comparison of the Welker patent with the prior Coy patents, Nos. 294,766 and 296,535, shows conclusively that every principle involved in the Welker machine is to be found in either one or the other of the Coy patents.

Under these circumstances, we are of opinion that the rulings of the lower court were proper, and must be affirmed.